**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

**KENDRELL DAIMON DANIELY,**

***Plaintiff,***

**v.**

**Deputy NICHOLAS DENNY and Sheriff DAVID DAVIS,**

***Defendants.***

**CIVIL ACTION NO. 5:24-cv-00306-TES**

**ORDER GRANTING DEFENDANT DAVIS'S MOTION TO DISMISS**

Plaintiff Kendrell Daimon Daniely filed this action on September 6, 2024, alleging state and federal civil-rights claims against Bibb County Sheriff's Deputy Nicholas Denny. [Doc. 1]. On October 21, 2024, Plaintiff amended his Complaint to add a single federal civil-rights claim against Sheriff David Davis. [Doc. 4]. Following the Amended Complaint [Doc. 4], Sheriff Davis filed a Motion to Dismiss [Doc. 12], asking the Court to dismiss the single malicious prosecution claim against him. *See generally* [Doc. 12-1].

**BACKGROUND**

Plaintiff began working as a jailor for the Bibb County Sheriff's Office in June 2021. [Doc. 4, ¶ 11]. In March 2023, Plaintiff resigned from his position with Bibb County to accept a position with the Henry County Police Department. [*Id.* at ¶ 13].

Henry County required Plaintiff to attend the Basic Mandate Law Enforcement program at the Georgia Public Safety Training Center to become a certified law enforcement officer. [*Id.* at ¶ 15].

Meanwhile, on April 24, 2023, Officer Denny "obtained warrants for the arrest of Plaintiff [] alleging Violation of Oath of Office, in violation of O.C.G.A. § 16-10-1, and Criminal Street Gang Activity, in violation of O.C.G.A. § 16-15-4." [*Id.* at ¶ 16]. To support such warrants, Officer Denny swore an affidavit alleging:

> The accused Ken Drell Daniely did commit the offense of Violation of Oath by a Public Officer when he being a sworn Employee of the Bibb County Sheriff Office located at 668 Oglethorpe St in Macon, Georgia did knowingly provide a "rod" in which this Investigator knows to be a rifle, to Jayshwayn Daniely. By the admission from Daniely from a prior interview, he stated his brothers were FourKG Crip. This Investigator knows FourKG Crip to be a Violent Hybrid Crip Street Gang in Macon Georgia. In doing so Daniely directly violated his signed Oath of Office and clearly displayed he was an Associate of the Criminal Organization FourKG Crip. All of the above information was discovered through a Social Media Search Warrant obtained and reviewed on the 20th day of December 2022.[1]

[*Id.* at ¶ 17]. Based on these affidavits, Judge Monroe—a Bibb County Superior Court Judge—issued warrants for Plaintiff's arrest. [*Id.* at ¶ 19]. With those warrants in hand, Officer Denny and other Bibb County Sheriff's Deputies arrested Plaintiff at the Georgia Public Safety Training Center. [*Id.* at ¶ 22]. Based on the information Officer Denny provided, prosecutors demanded a $500,000 bond, and Plaintiff was held until May 4,

---

[1] Officer Denny assured the Bibb County District Attorney's Office that the information came from Plaintiff's admissions during a videotaped interview. [Doc. 4, ¶ 28].

2023.[2] [*Id.* at ¶ 26]. Following his arrest, Plaintiff lost his job with the Henry County Police Department. [*Id.* at ¶ 24].

Eventually, a Bibb County grand jury returned a true bill indictment against Plaintiff. [*Id.* at ¶ 39]. But, on October 31, 2023, the district attorney's office filed a Motion to Nolle Pross the indictment, stating:

> This case was presented to the Grand Jury based on information provided by the lead law enforcement officer [Defendant Denny] indicating the defendant made admissions in a video interview, which were material to essential elements of this crime. Upon further investigation and review of the interview video, the information related to said material facts relied upon by the District Attorney's Office through the officer's testimony was discovered not to be true. The interview video had been requested multiple times by the DA's Office prior to Grand Jury but was only given over subsequent to the Grand Jury presentation.

[*Id.* at ¶ 40]. That same day, the Bibb County Superior Court dismissed the charges against Plaintiff. [Doc. 4-3].

Relevant to this Motion, Plaintiff now contends that Sheriff Davis violated his Fourth Amendment right to be free from seizures pursuant to legal process via a 42 U.S.C. § 1983 malicious prosecution claim. [Doc. 4, p. 15]. In short, Plaintiff alleges that Sheriff Davis "knew that [Officer] Denny would act unlawfully, and he failed to stop him from doing so. [Sheriff] Davis was aware of the need to take corrective action to

[2] Plaintiff's Amended Complaint lists several dates as occurring in 2024; however, the attachments to the Amended Complaint show each event occurred in 2023. Therefore, the Court assumes the incorrect years are scrivener's errors.

prevent [Officer] Denny from violating other citizen's constitutional rights, but he failed to take any action." [*Id.* at ¶ 67].

**LEGAL STANDARD**

When ruling on a 12(b)(6) motion, district courts must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). In fact, a well-pled complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations omitted).

Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it does require "more than [ ] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (citation omitted). To decide whether a complaint survives a motion to dismiss, district courts are instructed to use a two-step framework. *Id.* The first step is to identify the allegations that are "no more than mere conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an

entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Furthermore, a complaint attacked by a 12(b)(6) motion is subject to dismissal when it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (internal quotations omitted); *see also Twombly*, 550 U.S. at 555. "To be sure, a plaintiff may use legal conclusions to structure his complaint, but legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all of the factual allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at

545, 555. Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

**DISCUSSION**

Sheriff Davis's Motion asserts the qualified-immunity defense,[3] so the Court reviews Plaintiff's Amended Complaint under that framework.[4]

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To claim qualified immunity, a defendant must first show he was performing a discretionary function. *Moreno v. Turner*, 572 F. App'x 852, 855 (11th Cir. 2014). Discretionary functions include those "(1) undertaken pursuant to

---

[3] Plaintiff spends several pages of his brief arguing that "[t]he judge-made doctrine of qualified immunity, which cannot be justified by reference to the text of 42 U.S.C. § 1983 or the relevant common law background should be abrogated." [Doc. 16, p. 16 (font altered)]. As Plaintiff recognizes, this Court is bound by Eleventh Circuit precedent, which still recognizes the qualified-immunity defense. Therefore, the Court does not address Plaintiff's arguments to that effect.

[4] *See St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002) ("While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be, as it was in this case, raised and considered on a motion to dismiss. The motion to dismiss will be granted if the complaint fails to allege the violation of a clearly established constitutional right.") (internal citations omitted).

the performance of [an officer's] duties and (2) within the scope of [the officer's] authority." *Lenz v. Wilburn*, 51 F.3d 1540, 1545 (11th Cir. 1995). "Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)).[5] A plaintiff demonstrates that qualified immunity does not apply by showing "(1) the defendant violated a constitutional right, and (2) [the] right was clearly established at the time of the alleged violation." *Moreno*, 572 F. App'x at 855 (quoting *Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir. 2009)).

## I. Violation of a Constitutional Right[6]

To establish a Fourth Amendment malicious-prosecution claim[7] against Sheriff Davis, Plaintiff must allege both "a violation of [his] Fourth Amendment right to be free of unreasonable seizures" and "the elements of the common law tort of malicious

[5] Plaintiff does not dispute that Sheriff Davis acted within the scope of his discretionary authority. [Doc. 16, p. 14].

[6] The constitutional-violation analysis pertains to qualified immunity, as well as the broader § 1983 context. Put another way, "[b]ecause Plaintiff's section 1983 claims and Defendant['s] assertion of qualified immunity both hinge on whether Defendant['s] conduct violated Plaintiff's constitutional rights, the Court analyzes section 1983 and qualified immunity in tandem." *Goodin v. Floura*, No. 2:15-CV-0218-TOR, 2016 WL 5219462, at *5 (E.D. Wash. Sept. 21, 2016).

[7] Plaintiff's Amended Complaint and Response [Doc. 16] refer to numerous other § 1983 causes of action—*e.g.*, failure to train, failure to supervise, failure to terminate, etc. But those claims are not enumerated in Plaintiff's Amended Complaint. *Richardson v. Macon-Bibb Cnty.*, No. 5:20-CV-00322-TES, 2022 WL 2318501, at *9 (M.D. Ga. June 28, 2022) ("Failure-to-train and failure-to-supervise are separate claims under § 1983."). Therefore, if Plaintiff intended those to be distinct causes of action, he "should have brought them as independent counts in his [Amended] Complaint." *Id.*

prosecution." *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019) (internal quotation marks omitted). Under the common-law elements of malicious prosecution, Plaintiff must allege that Sheriff Davis "instituted or continued" a criminal prosecution against him, "with malice and without probable cause," that terminated in his favor and caused damage to him. *Id.* (internal quotation marks omitted). These elements "ultimately are controlled by federal law." *Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010) (quoting *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003)).

As Plaintiff lays out, "the Amended Complaint is clear that [Sheriff] Davis is being held liable based on his status as a supervisor."[8] [Doc. 16, p. 15]. "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999). Instead, a supervisor can be liable for a subordinate's conduct "when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Rankin v. Bd. of Regents of Univ. Sys. of Ga.*, 732 F. App'x 779, 782 (11th Cir. 2018) (citations omitted). To show a causal connection, a plaintiff may rely on a history of widespread abuse, or a custom or policy that results in deliberate indifference. *Cottone*

[8] It's not entirely clear that a plaintiff may bring a supervisor liability claim under the guise of a malicious prosecution claim instead of a standalone "failure to train"-type claim. However, the Court assumes without deciding that Plaintiff may do so here. Regardless, Plaintiff's claim against Sheriff Davis fails.

*v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Braddy v. Fla. Dep't of Lab. & Emp. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).

First, there is no allegation that Sheriff Davis personally participated in the constitutional violation. Here, Plaintiff concedes he "does not know if Defendant Davis took an active role in the obtaining of arrest warrants for Plaintiff." [Doc. 16, p. 11]. But, Plaintiff nonetheless argues that his Amended Complaint "allege[s] facts sufficient to state a claim against Defendant Davis for malicious prosecution for Plaintiff's subsequent indictment." [*Id.*]. To support that claim, Plaintiff refers to his allegation that "[Sheriff] Davis knew [Officer] Denny ***would make*** intentionally false statements under oath in his capacity as a Deputy Sheriff, and he took ***no action*** to stop him from doing so." [Doc. 4, ¶ 29 (emphasis added)]. These allegations fall short of showing how Sheriff Davis—himself—"instituted or continued" a prosecution against Plaintiff.[9] *See, e.g.*, *Shaw v. Peach Cnty.*, No. 5:21-CV-00145-TES, 2021 WL 4203233, at *8 (M.D. Ga. Sept. 15, 2021) ("Plaintiff alleges no act by Defendant Perry that could plausibly be construed to

[9] At the outset, Plaintiff alleges no affirmative action on the part of Sheriff Davis in instituting or continuing Plaintiff's prosecution. That is fatal to a malicious prosecution claim. *Cf. Washington v. Howard*, 25 F.4th 891, 912 (11th Cir. 2022) (discussing the requirement of affirmative action in the malicious-prosecution context); *Diminnie v. United States*, 522 F. Supp. 1192, 1195 (E.D. Mich. 1981) ("In general, a defendant is not liable for malicious prosecution unless he takes some affirmative action towards initiating judicial proceedings. Mere knowledge of the acts of another who causes the prosecution is not sufficient to sustain liability."); *Wolter v. Safeway Stores*, 60 F. Supp. 12, 15 (D.D.C. 1945) ("Mere passive knowledge, or acquiescence or consent in the acts of another person, is not sufficient to impose liability for malicious prosecution. There must be some affirmative action that the defendant instituted or caused the prosecution to be instituted.").

constitute his initiation of a criminal action against Plaintiff. Therefore, since Plaintiff cannot satisfy the first element of a common law tort claim for malicious prosecution, the Court concludes that he has failed to state either a federal or state law claim for malicious prosecution against Defendant Perry."). Since Plaintiff failed to show Sheriff Davis personally participated in the prosecution, he must rely on a separate prong of supervisor liability against Sheriff Davis. *Rankin*, 732 F. App'x at 782.

In attempting to carry that burden, Plaintiff relies on his allegations regarding a separate incident involving Officer Denny in August 2023[10] to infer that Sheriff Davis also knew about Officer Denny's misstatements in this case. [*Id.* at p. 12 (citing [Doc. 4, ¶¶ 29, 31])]. Even more, Plaintiff insists that "[a]s [Officer] Denny's supervisor, [Sheriff] Davis can be held liable if 'the facts support an inference [that Sheriff Davis] knew that [Officer Denny] would act unlawfully and failed to stop [him] from doing so.'" [*Id.* at p. 13 (internal citations omitted)]. So far, so good. But, Plaintiff's problem lies in the lack of concrete allegations regarding Sheriff Davis's knowledge of any widespread abuse by Officer Denny.

To show "widespread abuse sufficient to notify the supervising official" of a deprivation, the abuse "must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1048 (11th

[10] The August 2023 event occurred after Officer Denny made false statements regarding Plaintiff. It is not clear how Officer Denny's actions after the fact would give Sheriff Davis knowledge of (or the ability to change) prior actions.

Cir. 2014). Here, Plaintiff alleges—at most—two isolated instances of Officer Denny's misstatements.[11] That's not enough. *See, e.g.*, *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1267 (11th Cir. 2010) ("Here, there is no basis for claiming that the two complaints against Hoever prior to Doe's sexual assault rose to the level of sexual harassment similarly obvious, flagrant, rampant and of continued duration.") (internal citations omitted).

As for the policy-or-custom theory, Plaintiff failed to allege that Sheriff Davis instituted a custom or policy of allowing officers to lie. Indeed, "[a] single incident of a constitutional violation is insufficient to prove a policy or custom" sufficient to create supervisor liability. *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1311 (11th Cir. 2011); *see also Rankin*, 732 F. App'x at 783 ("Rankin's claim fails because most of the allegations supporting it are conclusory, and to the extent some are based on facts, they are limited

---

[11] To be sure, the Amended Complaint only alleges Sheriff Davis's knowledge about the separate incident—not Officer Denny's earlier misstatements as to Plaintiff. Indeed, Plaintiff alleges "[a]t the time Defendant Denny made these false statements to the Bibb County District Attorney's Office, Defendant Davis was aware Defendant Denny had made intentionally false statements under oath in order to secure warrants from a judicial officer." [Doc. 4, ¶ 29]. That does not sufficiently allege that Sheriff Davis knew about Officer Denny's lies in this case and failed to step in to stop Plaintiff's prosecution. *Cf. Harris v. City of Prattville*, No. 2:11-CV-31-WKW, 2012 WL 2445105, at *5 (M.D. Ala. June 27, 2012) ("There is no evidence that Chief Wadsworth personally participated in the alleged constitutional violation or that there are facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.") (internal citations omitted).

Even more, without sufficient allegations to show Sheriff Davis knew about Officer Denny's lies as to Plaintiff, there is no basis to allege any malice on the part of Sheriff Davis. In other words, if Sheriff Davis didn't know about the lies against Plaintiff, how could he have acted with malice toward Plaintiff such that he failed to step in to stop the prosecution?

to his own experience and as a result do not suggest a policy or custom of deliberate indifference to constitutional rights."). Plaintiff's allegations do not rise to the level of a policy or custom of deliberate indifference on the part of Sheriff Davis.

Taken together, Plaintiff simply failed to allege sufficient facts to show that Sheriff Davis either personally participated in the alleged constitutional violation, or that he created circumstances to allow it to happen. That means there is no viable claim of a constitutional violation against Sheriff Davis.[12]

## II. Clearly Established Law

Even assuming the Court got it wrong, and Plaintiff did state a viable constitutional violation, he still failed to satisfy his second burden under the qualified-immunity analysis—namely, the "clearly established" prong.

The "clearly established" requirement may be met by one of three showings: (1) a materially similar case has already been decided; (2) an accepted general principle should control the novel facts of the case with obvious clarity; or (3) the conduct in

[12] To be clear, even outside of the qualified-immunity analysis, this conclusion also means that Plaintiff failed to state a viable § 1983 claim against Sheriff Davis ***at all***. *See supra* n.6; *see also* Fed. R. Civ. P. 12(b)(6). Put another way, even if the Court got it wrong regarding qualified immunity, the analysis regarding Plaintiff's alleged constitutional violation as to Sheriff Davis remains the same and Plaintiff failed to plead sufficient facts to survive a 12(b)(6) motion. That's because to state a claim for relief under § 1983, a plaintiff must satisfy two elements. First, he must allege that an act or omission deprived him of a right, privilege, or immunity secured by the U.S. Constitution or laws of the United States. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). Second, he must allege that the act or omission was committed by a state actor or a person acting under color of state law. *Id.* Put simply, a "§ 1983 claim is predicated on an alleged violation of an underlying constitutional right." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005). "Absent the existence of an underlying constitutional right, no [§ 1983] claim will lie." *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987).

question so obviously violated the Constitution that no prior case law is necessary. *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204–05 (11th Cir. 2012). To carry this burden, Plaintiff needs to point to caselaw that "establishes a 'bright line' in such a 'concrete and factually defined context' to make it obvious to all reasonable government actors, in the defendant's position, that the actions violate federal law." *Thompson v. City of Birmingham*, 5 F. Supp. 3d 1304, 1314 (N.D. Ala. 2014) (citing *Scarbrough v. Myles*, 245 F.3d 1299, 1301 (11th Cir. 2001)). Indeed, "if caselaw, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997); *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000).

Plaintiff points to two cases to support his arguments on clearly established law—*Holmes v. Kucynda*, 321 F.3d 1069, 1084 (11th Cir. 2003) and *Cottone*, 326 F.3d at 1360. [Doc. 16, p. 15]. However, both cases miss the mark.

First, *Holmes* stands for the proposition that the "law was clearly established in [1998] that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest." 321 F.3d at 1084. While that may speak to Officer Denny's liability, that does not clearly indicate liability for Sheriff Davis—who, again, did not swear out a false affidavit.

Second, Plaintiff points to *Cottone* for the proposition that supervisors may be held liable for their subordinate's actions. Again, not quite on point. The question here

is whether a supervisor may be held liable for malicious prosecution when the supervisor did not act personally, and there is no history of widespread abuse or custom or policy of deliberate indifference. That specific fact pattern is important because "the clearly established law must be 'particularized' to the facts of the case." *Ellison v. Hobbs*, 786 F. App'x 861, 874 (11th Cir. 2019). References to cases with broad, overarching legal principles is not enough. As Sheriff Davis succinctly puts it, "Plaintiff has failed to point to a single case that stands for the proposition that a Sheriff or officer could be held liable *under a cause of action for malicious prosecution* for failing to prevent somebody from testifying [or taking other law enforcement action], when that person *might* lie[]."[13] [Doc. 20, p. 8 (second emphasis added)]. Aside from allegations of widespread abuse, or a policy or custom of deliberate indifference—which are lacking here—Plaintiff cites no case establishing such novel liability.

Plaintiff failed to carry his burden of pointing to "law as interpreted by the Supreme Court, the Eleventh Circuit, or the Supreme Court of [Georgia] to show that the constitutional violation was clearly established." *Keating v. City of Miami*, 598 F.3d

[13] It's important to note—again—that Officer Denny obtained the arrest warrants in April 2023, but the separate incident of lying happened in August 2023. Therefore, there is no way for Sheriff Davis to prevent the April 2023 conduct based on his knowledge of the August 2023 conduct (which had not yet occurred). And, although there is discussion of testimony before the grand jury, Plaintiff's Amended Complaint does not explicitly state that Officer Denny lied to the grand jury in October 2023. Plaintiff's allegations do assert that Officer Denny "communicated to the Assistant District Attorney handling Plaintiff['s] case that he was not concerned with whether or not Plaintiff Daniely was convicted, he just wanted an indictment against Plaintiff Daniely." [Doc. 4, ¶ 38]. That does not clearly show that Officer Denny lied to the grand jury, or, more importantly, that Sheriff Davis knew about any of the grand-jury related activity.

753, 766 (11th Cir. 2010). Therefore, qualified immunity operates to protect Sheriff Davis from liability here.

**CONCLUSION**

In sum, Plaintiff failed to overcome Sheriff Davis's qualified-immunity defense on both burdens. First, Plaintiff did not show a constitutional violation on the part of Sheriff Davis, and second, Plaintiff failed to show any clearly established law to support his theory. Accordingly, the Court **GRANTS** Sheriff Davis's Motion to Dismiss [Doc. 12] and **DISMISSES** Sheriff Davis from this action. The Clerk of Court is **DIRECTED** to **TERMINATE** Sheriff Davis as a party to this case.

**SO ORDERED**, this 5th day of February, 2025.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**